IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAULINE VICTORIA WATERFIELD,

        Plaintiff,

vs.                                                                 1:21-cv-00532-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Pauline Victoria Waterfield's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum, filed on March 22, 2022, and fully briefed on July 14, 2022. Docs. 30, 34, 37, 38. The parties have consented to my entering a final judgment in this case. Docs. 5, 12, 13. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to perform a function-by-function analysis when formulating Ms. Waterfield's residual functional capacity. I therefore GRANT Ms. Waterfield's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.   Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.  Background and Procedural History

Ms. Waterfield was born in 1973. AR[4] 23, 80, 218. She graduated from high school and attended one year of college. AR 38, 169, 243. She worked as a certified nursing assistant, medical assistant, cafeteria manager, and accounts receivable clerk. AR 38–39, 773, 809, 814, 1137, 1186, 1303. Ms. Waterfield left her position as a nursing assistant because she was unable

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 21-1 through 21-15 comprise the sealed administrative record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower righthand corner rather than the CM/ECF document number and page.

to care for her patients due to back pain. AR 39–40. Because this case was previously remanded by this Court, there has been more than one administrative hearing. At the first administrative hearing in 2016, Ms. Waterfield testified that her mother and daughter helped her with household chores, and her husband helped her get dressed. AR 40–41. Her mother and husband also did the shopping. AR 42. At the time of the second administrative supplemental hearing in August of 2020, Ms. Waterfield was separated from her husband and was living in Belen, New Mexico, with her three-year-old granddaughter. AR 762, 765. Her daughter-in-law assisted her with household chores, dressing, and cooking. AR 765–66. She did not drive at all, and her son and daughter-in-law shopped for her as well as drove her to doctor's appointments. AR 766, 769–70. By 2020, Ms. Waterfield was receiving skilled nursing and physical therapy at home. AR 770, 1816, 1849.

Ms. Waterfield applied for supplemental security income in September of 2014 and for disability insurance benefits in December of 2014. AR 218–25. Ms. Waterfield alleged she became disabled on September 3, 2014, because of lower back pain, GI problems, dizziness, nausea, tingling and numbness in her left leg, headaches, cystic nerve, and pinched nerve. AR 242. The Commissioner denied her claim initially and upon reconsideration. AR 78–95, 96–129, 130–35, 140–44. Ms. Waterfield requested a hearing before an ALJ, and ALJ Lillian Richter held a hearing on November 22, 2016. AR 32–77, 146–48.

The ALJ issued her first unfavorable decision on June 1, 2017. AR 7–31, 858–882. The Appeals Council denied Ms. Waterfield's request for review, and Ms. Waterfield appealed that decision to this Court. AR 1–4, 883–88, 890–91. This Court remanded the case for further proceedings based on the ALJ's errors at step five of the sequential evaluation process. AR 893–917. On remand, ALJ Richter held a second hearing on November 20, 2019, and a supplemental

hearing on August 4, 2020.  AR 757–853.  On February 16, 2021, ALJ Richter issued her second unfavorable decision, AR 725–56, and it is this decision that is at issue in this appeal.

The ALJ found that Ms. Waterfield met the insured status requirement of the Social Security Act through June 30, 2019.  AR 731.  At step one, the ALJ found that Ms. Waterfield had not engaged in substantial, gainful activity since September 3, 2014, the alleged onset date.  *Id*.  Because Ms. Waterfield had not engaged in substantial gainful activity for at least 12 months, the ALJ proceeded to step two.  At step two, the ALJ found that Ms. Waterfield suffered from the following severe impairments:  degenerative disc disease of the lumbar spine with spondylosis, radiculitis, depression, degenerative disc disease of the thoracic spine, osteoarthritis of the right hip, tendonitis of the right elbow and lateral epicondylitis, bilateral Achilles tendinitis, degenerative disc disease of the cervical spine, equinus deformity of the feet, chronic pain, sacroiliac joint dysfunction, left hip bursitis, post-traumatic stress disorder, arthralgia, degenerative joint disease of the right wrist, ankylosing spondylitis, and fibromyalgia.  *Id*.  The ALJ found that Ms. Waterfield's constipation, gastroesophageal reflux disease, helicobacter pylori infection, hemorrhoids, and bronchitis were non-severe.  *Id*.  At step three, the ALJ found that none of Ms. Waterfield's impairments, alone or in combination, met or medically equaled a Listing.  AR 732–34.  Because none of the impairments met a Listing, the ALJ assessed Ms. Waterfield's RFC.  The ALJ found that Ms. Waterfield had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: the claimant can occasionally stoop, kneel, crouch, crawl, and balance. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds.  She should avoid exposure to unprotected heights and hazardous machinery, as well as extreme cold and vibration.  The claimant can frequently handle and finger bilaterally.  She may need to alternate from standing to sitting every 45 minutes for 10 minutes while remaining at the workstation.  The claimant can perform detailed but not complex work in a workplace with few changes in the routine work setting.  Furthermore, she can have occasional

5

>interaction [with] supervisors, coworkers and members of the public. She can
>remain on task for two hours at a time.

AR 734. At step four, the ALJ concluded that Ms. Waterfield was unable to perform any of her past relevant work. AR 745. The ALJ found Ms. Waterfield not disabled at step five because she found Ms. Waterfield could perform jobs that exist in significant numbers in the national economy—such as marker, mail clerk, and small products assembler. AR 746. Ms. Waterfield timely filed her appeal to this Court on June 10, 2021.[5] Doc. 1.

## IV. Ms. Waterfield's Claims

Ms. Waterfield raises two main arguments and several sub-arguments on appeal: First, Ms. Waterfield claims that the ALJ made several errors in assessing her RFC, specifically: (1) the ALJ's RFC is contrary to substantial opinion evidence from several sources, and the ALJ failed to provide specific and legitimate reasons to discount those opinions; and (2) the ALJ failed to perform a function-by-function assessment and analysis, and further made an unsupported determination regarding Ms. Waterfield's subjective symptoms and limitations that is contrary to law. Second, Ms. Waterfield claims that the ALJ erred at step five by failing to incorporate all her limitations into the hypothetical question provided to the Vocational Expert ("VE") and failed to clarify inconsistent testimony regarding the jobs Ms. Waterfield could perform, contrary to the substantial evidence and the law. Doc. 30 at 1–2. Because I remand based on the ALJ's failure to assess Ms. Waterfield's work-related abilities on a function-by-function basis, the Court will not address the other alleged errors, which "may be affected by the

---

[5] Because this Court previously remanded Ms. Waterfield's case, Ms. Waterfield was not required to seek Appeals Council review again, and the ALJ's decision stands as the final decision of the Commissioner. *See* 20 C.F.R. § 404.984(a). Ms. Waterfield thus had 60 days to file an appeal from the ALJ's decision. The 60 days began running five days after the decision was mailed. 20 C.F.R. § 404.981.

ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

V.    Discussion

    A.   <u>The ALJ's Failure to Perform a Function-By-Function Analysis Requires Remand</u>.

    Ms. Waterfield argues that the ALJ failed to perform a function-by-function analysis. She argues that the ALJ instead simply found that Ms. Waterfield was able to perform light work. Doc. 30 at 20. Specifically, Ms. Waterfield argues that the ALJ failed to assess how much she could be expected to sit, stand, or walk. *Id*. The Commissioner does not address this argument in her response. *See generally* Doc. 34; *see also* Doc. 37 at 9. "The failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M.LR-Civ. 7.1(a). The Court could grant Ms. Waterfield's motion based on the Commissioner's consent to grant the motion as to the ALJ's failure to perform a function-by-function analysis. *Id*. Nevertheless, the Court grants Ms. Waterfield's motion on the merits of this claim.

    An "RFC determines a work capability that is exertionally sufficient to allow performance of at least substantially all of the activities of work at a particular level." SSR 83-10, 1983 WL 31251, at *2. It is a reflection of "the maximum amount of each work-related activity the individual can perform," and the ALJ must describe the "individual's ability to perform sustained work actives in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *7. "A 'regular and continuing basis' means 8 hours a day, for five days a week, or an equivalent work schedule." *Id.* at *2. When assessing a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Id.* at *7. Further, "the

7

RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.*

The ALJ may not simply express an RFC in terms of the exertional categories of "sedentary," "light," "medium" or "heavy" levels of work.  To ensure accuracy, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the "seven strength demands" of sitting, standing, walking, lifting, carrying, pushing and pulling.  *Id*. at *1 (citing 20 C.F.R. §§ 404.1545, 416.945).  "Each of the seven strength demands must be considered separately." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. 2003) (citing SSR 96-8p, 1996 WL 374184, at *3–4).  For example, an ALJ may describe a claimant as being able to "walk for 5 out of 8 hours and stand for 6 out of 8 hours." SSR 96-8p 1996 WL 374184, at *5.

A function-by-function assessment is generally conducted at step four to assess whether a claimant is able to perform past relevant work, but it also is important at step five.  Without a function-by-function analysis, "an adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have."  SSR 96-8p, 1996 WL 374184, at *4.  The ALJ uses the function-by-function analysis to determine the RFC, which not only is used at step four to determine if a claimant can perform his or her past relevant work, but also at step five to determine if the claimant is able to perform other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257 at 1260–61, s*ee also Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) ("a function-by-function analysis is also important at step 5, when the ALJ determines if there is other work

8

that the claimant could do"). Thus, if the ALJ errs in formulating the RFC, the error necessarily taints the analysis at both steps four and five.

SSR 96-8p requires that the ALJ conduct a function-by-function analysis of a claimant's abilities and limitations, **and then** link the RFC to that analysis. SSR 96-8p, 1996 WL 374184, at *3. The function-by-function analysis must take place prior to expressing the RFC in terms of an exertional category. *See Southard*, 72 F. App'x at 784; *Alexander v. Barnhart*, 74 F. App'x 23, 28 (10th Cir. 2003); *Diggdon v. Apfel*, 189 F.3d 477 (Table), 1999 WL 617702 (10th Cir. 1999) (all unpublished).

In this case, the ALJ failed to perform a specific function-by-function assessment as required by SSR 96-8p. The ALJ did not make any specific determinations as to Ms. Waterfield's ability to sit, stand, or walk. Instead, as Ms. Waterfield points out, the ALJ expressed her exertional capacity as "light work," without stating the maximum amount of work-related activities Ms. Waterfield can perform with respect to the seven strength demands. *See* Doc. 30 at 20–21; AR 734. The ALJ states Ms. Waterfield "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)." AR 734. This regulation, however, does not include any specifics as to the amount of time for sitting, standing, or walking.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). "Light work" requires lifting and a "good deal of

walking or standing"[6] and could involve sitting most of the time.[7]  *Id.*  Thus, the ALJ could have meant that Ms. Waterfield could stand or walk for six hours.  Or she could have meant that she could sit most of the time with pushing and pulling of arm or leg controls.  But the Court cannot conclusively make this determination because those functional limitations are not set forth.  The definition of "light work" does not sufficiently address Ms. Waterfield's ability to perform work activities in an ordinary work setting on a regular and continuing basis.  In addition, the ALJ's hypothetical to the vocational expert did not contain any specifics as to the amount of time sitting, standing, or walking.  Instead, the hypothetical stated that the individual "could perform work at the light exertional level."  AR 839–40.  Thus, this hypothetical is inconclusive as to whether the ALJ specifically considered Plaintiff's functional limitations as to standing, sitting, and walking.

There is no dispute that Ms. Waterfield suffered from degenerative disc disease in her lumbar spine.  Indeed, the ALJ found that degenerative disc disease of the lumbar spine with spondylosis, radiculitis, and degenerative disc disease of the thoracic spine were severe impairments at step two.  AR 731.  The record evidence demonstrates that Ms. Waterfield reported that her back pain limits her ability to lift, stand, walk, and sit.[8]  Objective medical

---

[6] Light work requires "frequent" lifting or carrying which means "being on one's feet up to two-thirds of a workday." SSR 83-10, 1983 WL 31251, at *6.  Consequently, "a full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  *Id.*

[7] When a person is able to do light work, the Commissioner presumes the person also can perform a full range of sedentary work, which involves sitting most of the time and walking and standing occasionally.  *See* 20 C.F.R. §§ 404.1567(a), 416.967(a).

[8] *See* AR 40 (pain prevents Ms. Waterfield from working around the house); 42-43, 773, 809, 814, 1137, 1186, 1303 (reports sleep disturbance because of pain); 396, 772 (problems with transitioning from sitting to standing, could tolerate 20 minutes of continuous activity); 425–26 (back pain aggravated by sitting, standing, twisting and walking); 428–29 (low back pain is

evidence also supported Ms. Whitefield's reports of pain. An MRI on September 10, 2014, showed a small central disc protrusion at L4-L5 and a mild facet hypertrophy at multiple levels. AR 413. An MRI on December 19, 2014, showed mild degenerative disc changes at T11-T12 with minimal right paracentral disc bulge. AR 485. An MRI on October 13, 2016, found degenerative changes with an annular tear[9] at L5-S1. AR 612. An MRI on November 28, 2018, showed mild disc bulge, disc height loss, and disc desiccation in T11-T12, and "L4-L5 shows annular fissure and central disc protrusion lateralizing to right contacting but not displacing the LF nerve root or significantly narrowing L5 subarticular recess." AR 1149. An MRI performed in May of 2019 had similar findings. AR 1367–68.

---

aggravated by changing positions, daily activities, lifting, sitting, standing, and walking); 439 (back pain symptoms are aggravated by ascending and descending stairs, bending, changing positions, standing, and walking); 452 (positive for back pain); 459 (presents with back pain, problem is worsening; radiating to left calf, left foot and left thigh); 561 (presents with low back pain that is aggravated by bending, changing positions, standing and walking); 576 (low back pain is worsening and radiating to left calf, foot and thigh); 609, 1255 (following injections for sacroiliac joint, symptoms remain unchanged, continues to have pain with activities); 617 (review of systems reveals positive for back pain, decreased mobility, joint clicking, joint locking, joint pain, joint stiffness, limping); 625 (reports pain increased with staying in one position for long periods of time including sitting, standing, lying down and walking); 634 (increased pain after standing lower extremity exercises); 772, 808, 809 (problems transitioning from sitting to standing because of pain); 390, 816, 1186, 1215, 1262, 1303, 1339 (problems sitting, standing, walking because of pain); 1242–44 (reports she can walk about 5 minutes without pain, symptoms worsen with lifting, driving, standing, kneeling, sitting, bending, twisting, lying on back and walking); 1259 (reports she is able to walk 5 mins without pain, pain with activities, night pain, aching legs worse when standing, driving, bending, moving, walking, and lifting); 1399, 1415 (pain aggravated by sitting, standing, bending over); 1411 (unable to move without pain); 1573 (stiffness with standing, sitting or lying down for too long).

[9] An annular fissure or tear is a deficiency of one or more layers of the annulus fibrosus. Most annular fissures are asymptomatic, but some may be painful. Chronic pain due to annular fissures can be due to granulation tissue or in-growth of nerve endings near the dorsal root ganglion, and/or due to disc herniation of the nucleus pulposus. ANNULAR DISC TEAR, Steven Tenny; Christopher C. Gillis, (last updated May 8, 2022). https://www.ncbi.nlm.nih.gov/books/NBK459235/ (last visited 9/7/2022).

The observations of Ms. Waterfield's health care providers also provided objective evidence of her pain. For example, at an initial physical therapy evaluation, Ms. Waterfield demonstrated an "antalgic gait pattern[10] with decreased stance time and stride length on left lower extremity." AR 389. In September 2014, Ms. Waterfield completed the Oswestry low back pain questionnaire, and scored 44%, which correlated to severe disability. AR 390. Other "objective findings" included significant gait deviations; active range of motion deficits to lumbar spine with decreased segmental mobility, left lower extremity gross motor weakness, and hypertonic lumbar and sacral paraspinals. AR 390–91. Upon retaking the Oswestry low back pain questionnaire in October 2014, Ms. Waterfield scored a 58%, which also correlated to severe disability. AR 387. Ms. Waterfield had several courses of facet joint injections which did not resolve her pain. AR 280, 605, 609, 818, 1245–47, 1200–03, 1255, 1325. In June of 2019, Ms. Waterfield did not have enough positive findings for a sacroiliac ("SI") joint injection. AR 1321. By September of that year, however, she had developed the positive findings and a SI joint injection was administered. AR 1312.

In the fall of 2016, Ms. Waterfield was observed to exhibit frequent pain behaviors and guarded movements during physical therapy sessions. AR 620, 622, 630. In November of 2016, Ms. Waterfield presented with a "stiff rigid posture in all positions, . . . significant increase in

---

[10] Antalgic gait is one of the most common forms of altered gait in patients presenting to the emergency department and primary care offices. It refers to an abnormal pattern of walking secondary to pain that ultimately causes a limp, whereby the stance phase is shortened relative to the swing phase. In a normal, healthy person, gait is a cyclical and symmetric process. However, when an abnormality is present in one of the joints, muscles, or bones of the complex system that regulates gait, this process is disrupted. Finding the source of this disruption is essential to accurate diagnosis and effective treatment. This activity reviews the evaluation and management of adults presenting with an antalgic gait and explains the role of the interprofessional team in caring for patients with this condition. ANTALGIC GAIT IN ADULTS, Nadja Auerbach; Prasanna Tadi. https://www.ncbi.nlm.nih.gov/books/NBK559243/ (last visited 9/6//2022).

pain with all trunk movements," a limited range of motion in her left hip, decreased strength in left lower extremity, and difficulty with transitional movements. AR 640.

In June 2019, the physical therapist assessed Ms. Waterfield with 72% impairment, noting "poor tolerance to any position sustained, especially supine on the treatment mat, minimal AROM [active range of motion] of the back without pain stopping her, minimal tolerance to LE [lower extremity] PROM [passive range of motion] by therapist prior to pain as well." AR 1129, 1131. At a physical therapy appointment in October 2019, the therapist observed that Ms. Waterfield "came to us crippled in pain in LB [lower back], heels, right wrist and elbow and [she is] dealing with abdominal pain secondary to stomach issues." AR 1399. Aggravating factors included sitting, standing, lying down, bending over to dress or pick up something. *Id*. The therapist observed that Ms. Waterfield had "severely weak core strength and [is] affected by pain exacerbation upon exertion." AR 1400. Ms. Waterfield was assessed with limited range of motion, limited strength, decreased ability to perform usual work, limited walking, standing and sitting, poor sleep, limited selfcare, limited lifting and carrying weight, limited fitness and recreational activity. AR 1402. By December of 2019, Ms. Waterfield had a "very guarded antalgic gait due to pain in bilateral feet, knees, thighs, hips and ankles." AR 1418.

The ALJ found that Ms. Waterfield's subjective reports about the intensity, persistence, and limiting effect of her symptoms were inconsistent with other evidence in the record. AR 735, 741. However, this does not relieve the ALJ of the duty to discuss the maximum amount of time Ms. Waterfield could perform each of the seven strength demands prior to finding she had the RFC to perform light work.

The ALJ's decision fails to explain how a claimant with unrelievable lower back pain, limited ability to lift, sit, stand, and walk, and requires assistance with daily activities such as

13

dressing and household chores, is able to perform light work—including lifting 10 to 20 pounds and walking or standing for 6 to 8 hours, five days a week—on a regular and continuing basis. There is no way for the Court to determine how the ALJ came to the conclusion that Ms. Waterfield was able to perform light work. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994) (Failure to provide the court with an adequate basis for reviewing application of the relevant legal standards is grounds for reversal.).

    B.   <u>The Court Will Remand for Further Proceedings</u>

Ms. Waterfield requests that the Court remand this case for an immediate award of benefits. Doc. 30 at 27; Doc. 37 at 12. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotations omitted). The Commissioner "is not entitled to adjudicate a case ad infinitum until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

In some cases, an immediate award of benefits is appropriate. However, "remand is more appropriate when the administrative record has not been fully developed, or where the ALJ makes minimal findings that are not supported by adequate evaluation of the evidence in the record." *Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1215 (D. Kan. 2003) (citing *Taylor v. Callahan*, 969 F. Supp. 664, 673 (D. Kan. 1997)). Here, the Court cannot determine

conclusively that Ms. Waterfield is disabled as a matter of law. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989). Instead, the Court simply cannot determine from the ALJ's decision how the ALJ considered Ms. Waterfield's ability to walk, stand, or sit in assessing her RFC. Remand is required to correct this error. The Court declines to order an immediate award of benefits.

## VI. Conclusion

The ALJ failed to apply the proper legal standards in this case. Had the ALJ performed a function-by-function analysis in the formulation of Ms. Waterfield's RFC, she may have reached a different conclusion.

IT IS THEREFORE ORDERED that plaintiff Pauline Vitoria Waterfield's Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum (Doc. 23) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
   Presiding by Consent